### No. 12,354.

### CAMPBELL v. HOCH.
(295 Pac. 798)

Decided January 26, 1931.

304

Messrs. Thompson & Grutter, Mr. T. E. Munson, for plaintiff in error.

Mr. M. M. Bulkeley, Messrs. Pelton & Chutkow, for defendant in error.

*In Department.*

Mr. Justice Campbell delivered the opinion of the court.

This is an action by plaintiff Hoch against the defendant, Mrs. Ella Campbell, on her promissory note to him as payee in the principal sum of $7,400 and interest. Both parties produced their evidence and at the close thereof the trial court, on plaintiff's motion, took the case from the jury and ordered judgment to be entered in plaintiff's favor against the defendant in the amount of the note. In her answer the defendant admits that she executed and delivered the note to the plaintiff, but says the instrument is void for reasons thus summarized by her counsel in their briefs: (1) No consideration for the making of the note; (2) the note was signed by her under a misrepresentation of the facts; (3) the minds of the parties never met so that a valid contract could exist. Our study of the record convinces us that the judg-

ment is right. The trial court would have failed in the performance of its duty had it submitted the case to the jury for its finding. These are the salient facts: The plaintiff was the president and largest stockholder, and the defendant owned 84 shares of the capital stock, of the First National Bank of Yuma, Colorado, of the par value of $100 per share. In the month of December, 1926, the capital stock of the bank became seriously impaired and plaintiff was informed by the bank examiner that it was necessary for the stockholders to make arrangements to restore the same and that there would be required a maximum assessment of 100 per cent on the outstanding stock. Thereupon a meeting at the bank of the stockholders was held on December 17 to take steps to make good the impairment. The stockholders then individually entered into and signed an agreement with the bank as a corporation. This agreement recited that among the resources of the bank certain assets of a questionable character, equal to the amount of the combined capital, surplus and net profits, made it necessary and unavoidable that an assessment be ordered against the stockholders. There was a further recital that owing to the condition prevailing it was deemed desirable that provisions be made at once to assure the payment of such an assessment when ordered and enforced. It was further recited in this agreement that the stockholders were willing to appropriate the sum of $40,000 for the purpose of paying a maximum assessment on the capital stock of the bank upon the condition that the same, when paid or appropriated, shall be deposited in the bank until the required assessment had been ordered and became due and payable. The agreement then provided that the bank, in contemplation of the proposed maximum assessment, bound itself, if necessary, to cause the enforcement of such assessment when ordered. The stockholders, each one for himself or herself, promised to pay the amounts appearing opposite their respective names and

signatures to the written contract. There were other provisions in the contract, but these above reproduced have been sufficiently stated for our present purpose.

To this contract, among other signatures, was that of the defendant Ella Campbell for $8,400. The defendant admits that she signed this contract and that she understood the same and refused to testify at the trial that the amount opposite her name of $8,400 was not there at the time of her signature. This was a voluntary contract upon the part of the stockholders to provide for a contemplated assessment and no question is raised as to the propriety and validity of such an agreement. Proceeding under this contract, the different stockholders proceeded to raise and put up the amount necessary to comply with its terms which they had signed. The defendant had $1,000 in cash in bank. She had not enough money to make good her subscription. She does testify that she did not at this meeting of the stockholders agree to pay an assessment of $8,400 and says that she told the stockholders she had only $1,000 which she was willing to pay on account of the contemplated assessment. The vice president of the bank, at the suggestion of the plaintiff Hoch, on the forenoon of the next day after this contract was signed, approached the defendant and told her that the plaintiff Hoch, the then president of the bank, was willing to advance for her benefit $7,400 in money which, together with the $1,000 she had of her own, would be a sufficient amount to enable her to comply with the terms of this written stockholders' agreement with the bank.

There may not be any express statutory authority for an agreement of this character which the stockholders made with the bank, but there is nothing illegal about it. If the stockholders wished, as they evidently did, to make provision for a fund to be used in making good an unavoidable assessment, we do not know why they might not do so. The agreement provides specifi-

cally that when the stockholders complied with this contract, whatever moneys they had to apply upon the same were to be deposited in the bank.

The argument of defendant's counsel that she signed this note under a misrepresentation of facts is ingenious, but it is unsound. Before the defendant signed the note she must have known, and did know, that on the night of the preceding day, as she herself testified, she had voluntarily signed a contract by which she bound herself to pay the full contemplated assessment against her on her 84 shares of stock as and when the same was made and ordered. She knew the contents of this contract and understood it, as she herself says, when she signed it. There is no justification for her contention here that she signed it because of a misstatement of fact that an assessment on the stock had already legally been made. Her promise to pay this assessment was legal and binding upon her as well as upon all other stockholders who signed the contract. The record does not contain any evidence that any oral representations were made to the defendant that a legal assessment on her stock had been made before she signed the note. She had as much knowledge about what had taken place concerning the proposed assessment as the plaintiff had. She was present at the stockholders' meeting on the preceding evening and knew as well as the plaintiff what steps the stockholders had taken with reference to a contemplated assessment, not an assessment that had already been legally made, by the Comptroller of the Currency. But even if the plaintiff had, by himself or his agent, falsely represented to her that a legal assessment by the Comptroller of the Currency had already been made, she must have known, and did know, that legally it was impossible for such an assessment to have been made between the late hours of the night of December 17 and the forenoon of the next day when she signed the note. She certainly did not rely upon any alleged misrepresentation. To the

contrary, she herself testified, as the trial court said in its ruling, and the undisputed evidence so shows, that she signed the note knowing its contents and pledged her bank stock to secure the payment of the note because her mistaken notion of a security was that, if a valid assessment was thereafter levied on her stock, the payee would take the pledged shares in full payment of the note and interest. Certainly, the plaintiff is not bound by any such construction of the transaction as the defendant contends for. As the trial court said, the defendant was mistaken in her view of the law and there was no misrepresentation of a fact by the plaintiff to her which induced her to sign the note.

The record does not show that the minds of the parties did not meet when this note was signed by the defendant. She had already agreed by her signature to the stockholders' contract with the bank to pay a maximum assessment on her shares of stock as and when the same was ordered. She also says that she signed the note, as the trial court specifically said, because she did not expect there ever would be any liability on her for the note and the trial court further said that she was simply mistaken on a point of law. The plaintiff certainly did not mislead her. To accommodate the defendant the plaintiff advanced for her use and benefit the sum of $7,400 and deposited the amount in the bank to her order and credit and the same was applied upon her voluntary agreement to meet her liability as the holder of stock. This amount, and the $1,000 in cash which the defendant had on deposit, amounted to $8,400, which is the sum the defendant bound herself to pay on a contemplated assessment. Her promise in the stockholders' agreement with the bank to pay to the bank was thus kept and $7,400 of that sum, which was evidenced by the note in suit, was deposited in the bank by the plaintiff as the agreement provided for and her liability as a stockholder was thus liquidated.

The judgment of the district court is right, and it is therefore affirmed.

MR. CHIEF JUSTICE ADAMS, MR. JUSTICE HILLIARD and MR. JUSTICE ALTER concur.